1   ROBBINS GELLER RUDMAN
      & DOWD LLP
2   DAVID C. WALTON (167268)
    CATHERINE J. KOWALEWSKI (216665)
3   655 West Broadway, Suite 1900
    San Diego, CA 92101-3301
4   Telephone: 619/231-1058
    619/231-7423 (fax)
5   davew@rgrdlaw.com
    katek@rgrdlaw.com
6
    Attorneys for Plaintiff
7
    [Additional counsel appear on signature page.]
8
                    UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10
                         WESTERN DIVISION
11
    CARL ENGLUND, JR., Individually     )   VIA FAX
12  and on Behalf of All Others Similarly )
    Situated,                           )   No.
13                                       )   CV 10-06815 RGK (OPx)
                        Plaintiff,       )   CLASS ACTION
14                                       )
         vs.                             )
15                                       )   COMPLAINT FOR VIOLATION OF
    CVB FINANCIAL CORP.,                 )   THE FEDERAL SECURITIES LAWS
16  CHRISTOPHER D. MYERS and             )
    EDWARD J. BIEBRICH, JR.,             )
17                                       )
                        Defendants.      )
18  _____ )   DEMAND FOR JURY TRIAL
19
20
21
22
23
24
25
26
27
28

**JURISDICTION AND VENUE**

1.     Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 ("1934 Act").  The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

2.     Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the false and misleading statements were made in or issued from this District.

3.     CVB Financial Corp.'s principal executive offices are located at 701 North Haven Avenue, Suite 350, Ontario, California.

**INTRODUCTION**

4.     This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of CVB Financial Corp. ("CVB" or the "Company") between October 21, 2009 and August 9, 2010, inclusive (the "Class Period"), against CVB and certain of its officers and/or directors for violations of the 1934 Act.

5.     CVB is a financial services company and the bank holding company for Citizens Business Bank (the "Bank").  The Bank is CVB's principal asset and is the largest financial institution headquartered in the Inland Empire region of Southern California.  CVB provides lending products, including commercial, agribusiness, consumer, real estate loans, and equipment and vehicle leasing.  Commercial products include lines of credit and other working capital financing, accounts receivable lending and letters of credit.  It also provides lease financing for municipal governments.  CVB is headquartered in Ontario, California.

6.     During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. Defendants engaged in improper behavior that harmed CVB's investors by failing to disclose the extent of seriously delinquent commercial real estate loans.  The Company also failed to adequately and timely record losses for its impaired loans, causing its financial statements to be materially false. As a result of defendants' false

- 1 -

1  statements, CVB's stock traded at artificially inflated prices during the Class Period,
2  reaching a high of $11.46 per share on April 22, 2010. The top officers and directors
3  of CVB benefited, as the Company's purportedly favorable financial results
4  contributed to the compensation paid to the top officers.

5       7.     Then, on August 9, 2010, after the market closed, CVB filed its Form 10-
6  Q with the Securities and Exchange Commission (the "SEC") for the second quarter
7  of 2010, revealing that on July 26, 2010, the Company had received a subpoena from
8  the SEC.   The subpoena requested information about the Company's loan
9  underwriting guidelines and its allowance for credit losses. The SEC also was seeking
10 information about CVB's methodology for grading loans and how it calculates
11 provisions for loan losses.

12      8.     On this news, CVB's stock fell $2.30 per share to close at $8.00 per share
13 on August 10, 2010 – a one-day decline of over 22% on volume over 15 times the
14 three-month daily average.

15      9.     The true facts, which were known by the defendants but concealed from
16 the investing public during the Class Period, were as follows:

17           (a)     Defendants failed to properly account for CVB's commercial real
18 estate loans, failing to reflect impairment in the loans;

19           (b)     CVB had not adequately reserved for loan losses such that its
20 financial statements were presented in violation of Generally Accepted Accounting
21 Principles ("GAAP"); and

22           (c)     Defendants failed to maintain proper internal controls related to
23 CVB's accounting for its loan loss reserves.

24      10.    As a result of defendants' false statements and omissions, CVB's
25 common stock traded at artificially inflated prices during the Class Period. However,
26 after the above revelations seeped into the market, the Company's shares were
27 hammered by massive sales, sending them down 30% from their Class Period high.

28

**PARTIES**

11.   Plaintiff Carl Englund, Jr. purchased CVB common stock as described in the attached certification and was damaged thereby.

12.   Defendant CVB is the bank holding company for the Bank and provides lending products, including commercial, agribusiness, consumer and real estate loans, and equipment and vehicle leasing.

13.   Defendant Christopher D. Myers ("Myers") is, and at all relevant times was, President and Chief Executive Officer ("CEO") of CVB.

14.   Defendant Edward J. Biebrich, Jr. ("Biebrich") is, and at all relevant times was, Chief Financial Officer ("CFO") and Executive Vice President of CVB.

15.   Defendants Myers and Biebrich (the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of CVB's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

**FRAUDULENT SCHEME AND COURSE OF BUSINESS**

16.   Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about CVB. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of CVB common stock was a success, as it: (i) deceived the investing public regarding CVB's prospects

- 3 -

1   and business; (ii) artificially inflated the price of CVB common stock; (iii) allowed
2   defendants to be paid millions of dollars in incentive awards based in part on CVB's
3   purported success; and (iv) caused plaintiff and other members of the Class to
4   purchase CVB common stock at inflated prices.

5                               **CLASS ACTION ALLEGATIONS**

6           17.    Plaintiff brings this action as a class action pursuant to Rule 23 of the
7   Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise
8   acquired CVB common stock during the Class Period (the "Class"). Excluded from
9   the Class are defendants and their families, the officers and directors of the Company,
10  at all relevant times, members of their immediate families and their legal
11  representatives, heirs, successors or assigns and any entity in which defendants have
12  or had a controlling interest.

13          18.    The members of the Class are so numerous that joinder of all members is
14  impracticable. The disposition of their claims in a class action will provide substantial
15  benefits to the parties and the Court. CVB has over 106.4 million shares of stock
16  outstanding, owned by hundreds if not thousands of persons.

17          19.    There is a well-defined community of interest in the questions of law and
18  fact involved in this case. Questions of law and fact common to the members of the
19  Class which predominate over questions which may affect individual Class members
20  include:

21              (a)     whether the 1934 Act was violated by defendants;

22              (b)     whether defendants omitted and/or misrepresented material facts;

23              (c)     whether defendants' statements omitted material facts necessary to
24  make the statements made, in light of the circumstances under which they were made,
25  not misleading;

26              (d)     whether defendants knew or deliberately disregarded that their
27  statements were false and misleading;

28

- 4 -

1          (e)    whether the price of CVB common stock was artificially inflated;

2    and

3          (f)    the extent of damage sustained by Class members and the

4    appropriate measure of damages.

5          20.    Plaintiff's claims are typical of those of the Class because plaintiff and

6    the Class sustained damages from defendants' wrongful conduct.

7          21.    Plaintiff will adequately protect the interests of the Class and has retained

8    counsel who are experienced in class action securities litigation.  Plaintiff has no

9    interests which conflict with those of the Class.

10         22.    A class action is superior to other available methods for the fair and

11    efficient adjudication of this controversy.

12                                    **BACKGROUND**

13         23.    CVB operates as a bank holding company for the Bank, which provides

14    various retail banking and financial services to small to mid-sized businesses, high

15    net-worth individuals, and professionals in the United States.  The Company offers

16    various deposit products, including checking, savings, money market, and time

17    certificates of deposit for business and personal accounts, as well as acts as a federal

18    tax depository for business customers.  It also provides various lending products

19    comprising commercial products, such as lines of credit and other working capital

20    financing, accounts receivable lending, and letters of credit; agribusiness products,

21    including loans to finance the needs of wholesale dairy farm operations, cattle feeders,

22    livestock raisers, and farmers; lease financing for municipal governments; financing

23    products, such as automobile leasing and financing, lines of credit, and home

24    improvement and home equity lines of credit for consumers; and real estate loans

25    consisting of mortgage and construction loans.  In addition, the Company offers

26    various specialized services, including cash management systems for monitoring cash

27    flow, a credit card program for merchants, courier pick-up and delivery, payroll

28    services, remote deposit capture, electronic funds transfers by way of domestic and

1   international wires and automated clearinghouse, on-line account access and various
2   financial services and trust services consisting of fiduciary services, mutual funds,
3   annuities, 401K plans, and individual investment accounts.   The Company was
4   founded in 1974 and is headquartered in Ontario, California.

5                      **PRE-CLASS PERIOD STATEMENTS**

6            24.    On October 16, 2009, CVB issued a press release announcing the
7   acquisition of San Joaquin Bank ("SJB"), which stated in part:

8            CVB Financial Corp. announced today its wholly-owned subsidiary
9            bank, Citizens Business Bank, entered an agreement with the Federal
10           Deposit Insurance Corporation ("FDIC") to purchase most of the assets
11           and assume most of the deposit liabilities of San Joaquin Bank
12           ("agreement").   The California Department of Financial Institutions
13           closed San Joaquin Bank today and appointed the FDIC as receiver.
14           Thereafter, Citizens Business Bank signed the agreement with FDIC.

15           "We are pleased to welcome the many valued customers of San
16           Joaquin Bank to Citizens Business Bank.  We will be working diligently
17           with San Joaquin Bank employees and the FDIC to ensure a smooth
18           transition of customer relationships to Citizens Business Bank," said
19           Chris Myers, President and Chief Executive Officer.  "We are excited
20           about the opportunity to grow our presence in the Bakersfield area. Our
21           superior customer service and financial products will blend well with
22           San Joaquin Bank's service standards."

23           Under the terms of the agreement, Citizens Business Bank will
24           purchase most of the assets and assume all deposits, with the exception
25           of Cede & Co. brokered deposits, of San Joaquin Bank.

26
27
28

## DEFENDANTS' FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

25.     On October 21, 2009, CVB issued a press release reporting its third quarter 2009 financial results.  The release reported net income of $19.3 million and earnings per share ("EPS") of $0.10.  The release further provided in pertinent part:

**Asset Quality**

The overall credit quality of the loan portfolio is sound.  Our allowance for credit losses increased from $40.1 million as of September 30, 2008 and $54.0 million as of December 31, 2008 to $87.3 million as of September 30, 2009.  The increase was primarily due to provisions for credit losses of $17.9 million during the fourth quarter of 2008 and a provision for credit losses of $55.0 million during the first nine months of 2009.  The allowance for credit losses was 2.43% and 1.11% of total loans and leases outstanding as of September 30, 2009 and 2008, respectively.

During the third quarter 2009, we increased provision for credit losses by $13.0 million and had net charge-offs of only $439,000.  Net charge-offs as a percentage of average loans were .01% for the third quarter.

During the first nine months of 2009, we had loan charge-offs totaling $22.4 million and recoveries on previously charged-off loans of $718,000.  This resulted in net charge-offs of $21.6 million.  By comparison, during the first nine months of 2008, the Company had net charge-offs of $1.7 million.

"We continue to make greater provisions for credit losses in order to build our reserves.  One of our key internal measurements is the ratio of our loan loss allowance to our nonperforming loans.  We are pleased to report that this ratio improved from 146% at June 30, 2009 to 150% at

September 30, 2009.  In looking forward, our goal is to be proactive in building our reserves, preparing for any further deterioration in economic conditions," said Chris Myers.

We had $58.1 million in non-performing loans at September 30, 2009 or 1.61% of total loans.  This compares to $17.7 million at December 31, 2008 and $16.6 million at September 30, 2008.  At September 30, 2009, we had loans delinquent 30 to 89 days of $6.9 million.  This compares to delinquent loans of $5.2 million as of December, 31, 2008, and $4.9 million as of September 30, 2008. . . .

A misconception is that most of our loans are in the Inland Empire, one of the hardest hit areas of the United States during this recession.  However, of our total loan portfolio, approximately 22% is based in the Inland Empire and 33% is based in L.A. County. . . .

Our construction loan portfolio totaled $295.3 million as of September 30, 2009 down from $351.5 million as of December 31, 2008. This represents 8.2% of our total loans outstanding at September 30, 2009. Of the $295.3 million, $76.7 million is for residential construction and residential land loans. This represents 26% of the construction loans outstanding or 2.1% of our total loan portfolio. Of note, 34% of our total construction loan portfolio is based in the Inland Empire.

26.   After this news, CVB's stock closed up from $7.86 per share to $8.81 per share on October 22, 2009.

27.   On November 5, 2009, CVB filed a Form 10-Q with the SEC for the third quarter of 2009, which included substantially similar financial results as previously reported in the October 21, 2009 release.   The Form 10-Q was accompanied by a certification signed by defendant Myers, which stated:

I, Christopher D. Myers, certify that:

- 8 -

1.     I have reviewed this quarterly report on Form 10-Q of CVB Financial Corp.;

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    (a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.     The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's Board of Directors (or persons performing the equivalent functions):

a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

28.     Defendant Biebrich signed a nearly identical certification included in the Form 10-Q.

29.     On January 21, 2010, CVB issued a press release reporting its full year and fourth quarter 2009 earnings results.  The release reported net income per

1  common share of $0.16 and net income of $17.1 million for the fourth quarter and net

2  income of $65.4 million for the year ended December 31, 2009 and EPS at $0.56 per

3  share.  The release further reported in pertinent part:

4       Chris Myers, President and CEO commented, "We achieved

5       several goals in 2009: we raised $132.5 million in capital, re-paid all of

6       our TARP funds, acquired San Joaquin Bank, increased our allowance

7       for loan losses by $55 million and had substantial organic deposit

8       growth. All of these efforts contributed to strengthening the Bank and

9       helped us grow and prosper in this challenging environment."

10                    *       *       *

11  **Asset Quality**

12       The SJB loans have a par value of $655.1 million and an adjusted

13       carrying value of $455.3 million.  Due to the nature of the transaction

14       and the loss guarantee from the FDIC, we have separated the discussion

15       of asset quality into two sections: non-covered loans and covered loans.

16       The non-covered loans represent the legacy Citizens Business Bank

17       loans and exclude all loans acquired in the SJB acquisition.  The SJB

18       loans are "covered" loans as defined in the loss sharing agreement with

19       the FDIC.  These loans have been marked to fair value and also have a

20       guarantee by the FDIC.  The allowance for credit losses as of December

21       31, 2009 pertains only to those loans made by Citizens Business Bank

22       and not those acquired through the San Joaquin Bank transaction.

23  **Citizens Business Bank Asset Quality (non-covered loans)**

24       The allowance for credit losses increased from $55.0 million as of

25       December 31, 2008 to $108.9 million as of December 31, 2009.  The

26       increase was primarily due to a provision for credit losses of $80.5

27       million during 2009.  During 2009, we had loan charge-offs totaling

28       $26.3 million and recoveries on previously charged-off loans of

- 11 -

$803,000. This resulted in net charge-offs of $25.5 million. By comparison, during 2008, the Company had net charge-offs of $5.7 million and a $26.6 million provision for credit losses. The allowance for credit losses was 3.02% and 1.44% of total loans and leases outstanding as of December 31, 2009 and 2008, respectively. "Because the economy continues to struggle, our objective has been to increase our allowance as a percentage of total loans. Although our losses and non-performing loans are low by comparison to peers, they have increased. We regard the overall weakness in the economy as a driving factor in determining our allowance," said Myers.

We had $69.8 million in non-performing loans at December 31, 2009, or 1.93% of total loans. This compares to non-performing loans of $17.7 million at December 31, 2008. The non-performing loans consist of $13.9 million in residential construction and land loans, $23.8 million in commercial construction loans, $11.8 million in single-family mortgage loans, $17.1 million in commercial real estate loans, and $3.2 million in commercial loans.

At December 31, 2009, we had $3.9 million in Other Real Estate Owned ("OREO"). This represents a decrease of $2.7 million from OREO of $6.6 million at December 31, 2008. At December 31, 2008, we had 10 OREO properties. During 2009, we added nine properties for a total of $11.5 million to OREO. During the year, we sold 17 properties with an OREO value of $14.3 million for cash proceeds of $13.9 million. We now have two OREO properties.

At December 31, 2009, we had loans delinquent 30 to 89 days of $10.5 million. This compares to delinquent loans of $5.2 million at December 31, 2008. As a percentage of total loans, delinquencies,

1     excluding non-accruals, were 0.29% at December 31, 2009 and 0.14% at

2     December 31, 2008.

3         30.    On March 4, 2010, CVB filed a Form 10-K with the SEC for the full year

4 and fourth quarter 2009, which included substantially similar financial results as

5 previously reported in the January 22, 2010 release.    The Form 10-K was

6 accompanied by certifications signed by defendants Myers and Biebrich, substantially

7 identical to the certification quoted above.

8         31.    On April 21, 2010, CVB issued a press release reporting its first quarter

9 2010 earnings results.  The release reported EPS of $0.15 and net income of $16.1

10 million for the first quarter.  The release further provided in pertinent part:

11     **Asset Quality**

12         We have separated the discussion of asset quality into two

13     sections: non-covered loans and covered loans.  The non-covered loans

14     represent the legacy Citizens Business Bank loans and exclude all loans

15     acquired in the SJB acquisition.  The SJB loans are "covered" loans as

16     defined in the loss sharing agreement with the FDIC.  These loans have

17     been marked to fair value and also have a guarantee by the FDIC.  The

18     allowance for credit losses as of March 31, 2010 pertains only to those

19     loans made by Citizens Business Bank and not those acquired through

20     the San Joaquin Bank transaction.

21     **Citizens Business Bank Asset Quality (non-covered loans)**

22         The allowance for credit losses increased from $108.9 million as

23     of December 31, 2009 to $112.3 million as of March 31, 2010.  The

24     increase was primarily due to a provision for credit losses of $12.2

25     million during the first quarter of 2010, offset by net loan charge-offs of

26     $8.8 million. By comparison, for the first quarter of 2009, the Company

27     had net charge-offs of $10.2 million and a $22.0 million provision for

28     credit losses.  The allowance for credit losses was 3.20% and 1.80% of

1    total loans and leases outstanding as of March 31, 2010 and 2009,

2    respectively.

3         We had $76.8 million in non-performing loans at March 31, 2010,

4    or 2.19% of total loans. This compares to non-performing loans of $69.8

5    million at December 31, 2009. The non-performing loans consist of $2.9

6    million in residential construction and land loans, $31.2 million in

7    commercial construction loans, $13.7 million in single-family mortgage

8    loans, $22.0 million in commercial real estate loans, $6.9 million in

9    commercial loans and $123,000 in consumer loans.

10        At March 31, 2010, we had $15.2 million in Other Real Estate

11   Owned ("OREO"). This represents an increase of $11.3 million from

12   OREO of $3.9 million at December 31, 2009. At December 31, 2009,

13   we had two OREO properties. During the first quarter of 2010, we

14   added three properties for a total of $12.5 million to OREO. We sold

15   two properties with an OREO value of $1.2 million for cash proceeds of

16   $1.4 million. We now have three OREO properties.

17        At March 31, 2010, we had loans delinquent 30 to 89 days of $9.8

18   million. This compares to delinquent loans of $10.5 million at

19   December 31, 2009. As a percentage of total loans, delinquencies,

20   excluding non-accruals, were 0.28% at March 31, 2010 and 0.29% at

21   December 31, 2009.

22        32.   On May 10, 2010, CVB filed a Form 10-Q with the SEC for the first

23   quarter 2010, which included substantially similar financial results as previously

24   reported in the April 22, 2010 release. However, the 10-Q reported a substantially

25   greater amount in delinquent loans than in the press release. In the press release, CVB

26   reported it had $9.8 million in loans delinquent 30-89 days, which represented 0.28%

27   of its total loans as of March 31, 2010. In contrast, in its 10-Q, CVB reported it had

28   $17.9 million in loans delinquent 30-89 days, which represented 0.51% of its total

1   loans as of March 31, 2010.  The Form 10-Q was accompanied by certifications

2   signed by defendants Myers and Biebrich, substantially identical to the certification

3   quoted above.

4         33.     On July 21, 2010, CVB issued a press release reporting its second quarter

5   2010 earnings results.  The release reported EPS of $0.18 and net income of $19.0

6   million for the second quarter.  The release further provided in pertinent part:

7   **Asset Quality**

8         We completed our annual FDIC and Department of Financial

9   Institutions Safety and Soundness Examination during May 2010.

10         We have separated the discussion of asset quality into two

11   sections: non-covered loans and covered loans.  The non-covered loans

12   represent the legacy Citizens Business Bank loans and exclude all loans

13   acquired in the SJB acquisition.  The SJB loans are "covered" loans as

14   defined in the loss sharing agreement with the FDIC.  These loans have

15   been marked to fair value and also have a guarantee by the FDIC.  The

16   allowance for credit losses as of June 30, 2010 pertains only to those

17   loans made by Citizens Business Bank and not those acquired through

18   the San Joaquin Bank transaction.

19   **Citizens Business Bank Asset Quality (non-covered loans)**

20         The allowance for credit losses increased from $108.9 million as

21   of December 31, 2009 to $118.5 million as of June 30, 2010.  The

22   increase was primarily due to a provision for credit losses of $23.2

23   million during the first six months of 2010, offset by net loan charge-offs

24   of $13.6 million.  By comparison, for the first six months of 2009, the

25   Company had a $42.0 million provision for credit losses and net charge-

26   offs of $21.2 million.  The allowance for credit losses was 3.38% and

27   2.07% of total loans and leases outstanding as of June 30, 2010 and

28   2009, respectively.

1            We had $82.9 million in non-performing loans at June 30, 2010,

2    or 2.36% of total non-covered loans.  This compares to non-performing

3    loans of $69.8 million at December 31, 2009.  The non-performing loans

4    consist of $2.8 million in residential construction and land loans, $39.1

5    million in commercial construction loans, $12.7 million in single-family

6    mortgage loans, $20.7 million in commercial real estate loans, $7.5

7    million in commercial loans and $143,000 in consumer loans.

8            At June 30, 2010, we had $15.0 million in Other Real Estate

9    Owned ("OREO"), down from $15.2 million at March 31, 2010 and an

10    increase of $11.1 million from OREO of $3.9 million at December 31,

11    2009.  At December 31, 2009, we had two OREO properties.  During the

12    first six months of 2010, we added five properties for a total of $12.6

13    million to OREO.  We sold three properties with an OREO value of $1.5

14    million for cash proceeds of $1.7 million.  We now have four OREO

15    properties.

16            At June 30, 2010, we had loans delinquent 30 to 89 days of $14.4

17    million.  This compares to delinquent loans of $17.9 million at March

18    31, 2010 and $10.5 million at December 31, 2009.  As a percentage of

19    total loans, delinquencies, excluding non-accruals, were 0.41% at June

20    30, 2010, 0.51% at March 31, 2010 and 0.29% at December 31, 2009.

21        34.   On July 26, 2010, CVB issued a press release announcing that the

22    Company's CFO Biebrich would be retiring effective year's end.

23        35.   On August 9, 2010, after the market closed, CVB filed a Form 10-Q with

24    the SEC for the second quarter of 2010.  The Form 10-Q contained the following

25    disclosure in pertinent part:

26            On July 26, 2010, we received a subpoena from the Los Angeles

27    office of the Securities and Exchange Commission.  The subpoena and

28    the SEC's corresponding investigation are non-public, which means that

1    the information we provide to the SEC will not be publicized.  We are,
2    however, required to publicly disclose the fact that we received a
3    subpoena from the SEC. The subpoena requests information regarding
4    our loan underwriting guidelines, our allowance for credit losses and our
5    allowance for loan loss calculation methodology, our methodology for
6    grading loans and the process for making provisions for loan losses, and
7    our provision for credit losses.  In addition, the subpoena requests
8    information regarding presentations we have given or conferences we
9    have attended with analysts, brokers, investors or prospective investors.

10          36.    On this news, CVB's stock fell $2.30 per share to close at $8.00 per share
11   on August 10, 2010 – a one-day decline of over 22% on extremely high volume.

12          37.    The true facts, which were known by the defendants but concealed from
13   the investing public during the Class Period, were as follows:

14                 (a)    Defendants failed to properly account for CVB's commercial real
15   estate loans, failing to reflect impairment in the loans;

16                 (b)    CVB had not adequately reserved for loan losses such that its
17   financial statements were presented in violation of GAAP; and

18                 (c)    Defendants failed to maintain proper internal controls related to
19   CVB's accounting for its loan loss reserves.

20          38.    As a result of defendants' false statements, CVB's stock traded at inflated
21   levels during the Class Period.  However, after the above revelations seeped into the
22   market, the Company's shares were hammered by massive sales, sending them down
23   over 30% from their Class Period high.

24                        **LOSS CAUSATION/ECONOMIC LOSS**

25          39.    During the Class Period, as detailed herein, the defendants made false
26   and misleading statements and engaged in a scheme to deceive the market and a
27   course of conduct that artificially inflated the price of CVB common stock and
28   operated as a fraud or deceit on Class Period purchasers of CVB stock by

- 17 -

1  misrepresenting the Company's business and prospects.  Later, when the defendants'
2  prior misrepresentations and fraudulent conduct became apparent to the market, the
3  price of CVB's common stock fell precipitously, as the prior artificial inflation came
4  out of the price over time.  As a result of their purchases of CVB common stock
5  during the Class Period, plaintiff and other members of the Class suffered economic
6  loss, *i.e.*, damages, under the federal securities laws.

7                               **NO SAFE HARBOR**

8       40.    CVB's verbal "Safe Harbor" warnings accompanying its oral forward-
9  looking statements ("FLS") issued during the Class Period were ineffective to shield
10  those statements from liability.

11       41.    The defendants are also liable for any false or misleading FLS pleaded
12  because, at the time each FLS was made, the speaker knew the FLS was false or
13  misleading and the FLS was authorized and/or approved by an executive officer of
14  CVB who knew that the FLS was false.   None of the historic or present tense
15  statements made by defendants were assumptions underlying or relating to any plan,
16  projection or statement of future economic performance, as they were not stated to be
17  such assumptions underlying or relating to any projection or statement of future
18  economic performance when made, nor were any of the projections or forecasts made
19  by defendants expressly related to or stated to be dependent on those historic or
20  present tense statements when made.

21                                  **COUNT I**

22           **For Violation of §10(b) of the 1934 Act and Rule 10b-5**
                                **Against All Defendants**
23

24       42.    Plaintiff incorporates ¶¶1-41 by reference.

25       43.    During the Class Period, defendants disseminated or approved the false
26  statements specified above, which they knew or deliberately disregarded were
    misleading in that they contained misrepresentations and failed to disclose material
27

28

1   facts necessary in order to make the statements made, in light of the circumstances
2   under which they were made, not misleading.

3        44.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

4             (a)    employed devices, schemes and artifices to defraud;

5             (b)    made untrue statements of material facts or omitted to state
6   material facts necessary in order to make the statements made, in light of the
7   circumstances under which they were made, not misleading; or

8             (c)    engaged in acts, practices and a course of business that operated as
9   a fraud or deceit upon plaintiff and others similarly situated in connection with their
10  purchases of CVB common stock during the Class Period.

11       45.    Plaintiff and the Class have suffered damages in that, in reliance on the
12  integrity of the market, they paid artificially inflated prices for CVB common stock.
13  Plaintiff and the Class would not have purchased CVB common stock at the prices
14  they paid, or at all, if they had been aware that the market price had been artificially
15  and falsely inflated by defendants' misleading statements.

16                                **COUNT II**

17                **For Violation of §20(a) of the 1934 Act**
                          **Against All Defendants**
18
19       46.    Plaintiff incorporates ¶¶1-45 by reference.

20       47.    The Individual Defendants acted as controlling persons of CVB within
21  the meaning of §20(a) of the 1934 Act.  By reason of their positions with the
    Company, and their ownership of CVB stock, the Individual Defendants had the
22  power and authority to cause CVB to engage in the wrongful conduct complained of
23  herein.  CVB controlled the Individual Defendants and all of its employees.  By
24  reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

25                        **PRAYER FOR RELIEF**

26       WHEREFORE, plaintiff prays for judgment as follows:
27
28

                                   - 19 -

1      A.    Declaring this action to be a proper class action pursuant to Fed. R. Civ.

2 P. 23;

3      B.    Awarding plaintiff and the members of the Class damages, including

4 interest;

5      C.    Awarding plaintiff reasonable costs and attorneys' fees; and

6      D.    Awarding such equitable/injunctive or other relief as the Court may deem

7 just and proper.

## JURY DEMAND

9      Plaintiff demands a trial by jury.

10 DATED: September 14, 2010      ROBBINS GELLER RUDMAN
                                    & DOWD LLP
11                         DAVID C. WALTON
                         CATHERINE J. KOWALEWSKI

12

13

14                             DAVID C. WALTON

15                       655 West Broadway, Suite 1900
                       San Diego, CA 92101-3301
16                       Telephone: 619/231-1058
                       619/231-7423 (fax)

17
                       KENDALL LAW GROUP, LLP
18                       JOE KENDALL
                       SCOTT KENDALL
19                       3232 McKinney Avenue, Suite 700
                       Dallas, TX 75204
20                       Telephone: 214/744-3000
                       214/744-3015 (fax)

21
                       Attorneys for Plaintiff

22

23

24

25

26

27

28 S:\CptDraft\Securities\Cpt CVB Financial.doc

Plaintiff's Certification of Investment of
CVB Financial Corporation

I, _Carl Englund, Jr._, hereby certify that the following is true and correct to the best of my knowledge, information and belief:

1.      I have reviewed the Complaint in this action and authorize the filing of this Certification.

2.      If chosen, I am willing to serve as a representative party on behalf of the class (the "Class") as defined in the Complaint, including providing testimony at deposition and trial (if necessary). I am willing to participate on an executive committee of shareholders.

3.      Plaintiff's transaction in CVB Financial Corporation security that is the subject of this action is:

| # SHARES PURCHASED | DATE PURCHASED | PRICE PER SHARE | CLASS OF STOCK (e.g. COMMON) | IF SOLD, # OF SHARES SOLD | DATE SOLD (if sold) | PER SHARE SOLD PRICE |
|---|---|---|---|---|---|---|
| 392 | 4/8/2010 | 10.17 | COMMON | | | |
| 100 | 5/7/2010 | 10.38 | " | | | |
| 203 | 5/28/2010 | 10.12 | " | | | |
| | | | | 695 | 8/30/2010 | 6.6310 |

4.      I did not purchase these securities at the direction of my counsel, or in order to participate in a lawsuit under the Securities Exchange Act of 1934.

5.      During the three-year period preceding the date of the Certification, I have not sought to serve, nor have I served, as a representative to any party or on behalf of any class in any action arising under the Securities Exchange Act of 1934.

6.      I will not accept any payment if chosen to serve as a representative party on behalf of the Class beyond my pro rata share of an award to the Class, or as otherwise ordered and approved by the Court.

Signed under penalty of perjury, this _10th_ day of _SEPTEMBER_ 2010.

_____
Signature

_Carl Englund, Jr._
Name (please print)


Telephone Number

Return to:
Kendall Law Group, LLP
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: 214-744-3000
Facsimile: 214-744-3015
Email: administrator@kendalllawgroup.com
Website: www.kendalllawgroup.com

Name & Address:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CARL ENGLUND, JR., Individually and on Behalf of All Others Similarly Situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV 10-06815** RGK (OPX) |
| v. | |
| CVB FINANCIAL CORP., CHRISTOPHER D. MYERS and EDWARD J. BIEBRICH, JR., | |
| DEFENDANT(S). | **SUMMONS** |

BY FAX

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

        Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _David C. Walton_____, whose address is _Robbins Geller, et al., 655 West Broadway, Suite 1900, San Diego, CA 92101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

TERRY NAFISI<br>Clerk, U.S. District Court

SEP 1 4 2010

Dated: _____        By: _____
                                   **G. GUZMAN**
                                   Deputy Clerk

                                   (Seal of the Court)
                                   **SEAL**

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                         SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| CARL ENGLUND, JR., Individually and on Behalf of All Others Similarly Situated | CVB FINANCIAL CORP., CHRISTOPHER D. MYERS and EDWARD J. BIEBRICH, JR. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David C. Walton (167268)<br>Robbins Geller Rudman & Dowd LLP<br>655 West Broadway, Suite 1900, San Diego, CA 92101  619.231.1058 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:  JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Complaint for Violation of the Federal Securities Laws  15 U.S.C. §§78j(b) 78t(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

CV 10 -06815 RGK (OPX)

FOR OFFICE USE ONLY:   Case Number: 

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No   ☑ Yes
If yes, list case number(s): CV-10-6256-MMM(PJWx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                             ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☑ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Caldwell, Idaho |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date September 14, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

## CV10- 6815 RGK (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)         NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY